All right, our next case this morning, our last case this morning, is Silver versus City of Albuquerque 23-2058. Counsel, you may begin. May it please the court, Carter Harrison for the appellant Gerald Silver. The question raised in this case is whether a municipality gets a free pass to violate the TCPA with impunity upon the mere incantation. Yes, Your Honor. Upon the mere incantation and sometimes the mere implicit invocation and sometimes even merely in the midst of the COVID-19 pandemic. Now, first of all, the City raises an even more ambitious argument, which is the TCPA should not apply to them at all, ever. I'd like to the City is a person under the TCPA, the FCC takes our side on that unambiguously. The District Court effectively sided with us on that and certainly didn't side with the City on that. We contend that the Blackboard 2 decision from the FCC is legislative. We say it's legislative because of the high degree of notice and comment procedures. It adjusted the legal rights and obligations, for example, as to federal and state government contractors, to whom it also unambiguously subjected the TCPA's provision. And then one thing that we didn't specifically mention in our briefs, but the court can certainly take judicial notice of, is that it was published in the Federal Register at volume 86, number 28, page 9299, and that was in February of 2021. We will say that in contrast to how the Fourth Circuit has been managing the physician's desk reference case on remand from the Supreme Court, and as a reminder that's a case that went up to the Supreme Court, didn't really get any kind of holding, but got some concurrences that wanted to say something. It hasn't had much action outside of the Fourth Circuit, but it's had quite a lot of action going up and down between the District Court and the Court of Appeals. We do not concede, however, that even if the Broadnet determination was interpretive, we would say the Hobbs Act still applies to prevent judicial review. That's consistent with this court's case in Sorenson, and then the Ninth Circuit's case in Hamilton. We cited those at page 11 of our opening brief. Retroactivity I did want to briefly address, so the city, I believe, effectively concedes, or I think explicitly concedes retroactivity if the determination is deemed to be interpretive, and they did so on pages 18 and 25 of their answer brief. If it's legislative, I believe that under this court's jurisprudence, the Stuart capital factors would apply. These factors all basically get at how new the the clearest articulation, but really the other two cases that we've been talking about, Blackboard from way back in 2016, obviously involved school districts and utilities, and then of course, so I mean we don't think that's binding. I could see in some circumstances, and certainly if it made a clear statement this is an interpretive versus legislative action, but the reality of the APA Chevron fiction is that what the, in filling in interstitial gaps in the statute, we say that agencies are interpreting as a broad matter. At the very least, the COVID-19 ruling would get us back to at least March of 2020. The COVID-19 ruling, unambiguously, it was shorter, but obviously, prong one, which we all agree is satisfied here, is that for the emergency purposes exception to apply in this context, it has to be a governmental entity or a hospital, so obviously the implication there is that this is not a surprise that the city is covered by the TCPA. Now, if for some reason the court were to find that it is non-retroactive, we contend that we still plausibly alleged calls after the Broadnet 2 decision, and I'll address that when I address the the other issue of the range of plausibly alleged calls that we made, namely in the context of whether we lifted the ban on mass gatherings, which goes to the other issue here. Once again, we would say whether it's interpretive or legislative, that full Chevron deference applies. We have a long note on that. That's footnote 9 on page 23 of our opening brief. Obviously, again, the Fourth Circuit has suggested that interpretive decisions can only get more deference as a backstop, if we would at least give more deference to that decision. And then, of course, if you get to just the meat of the decision, the decision is right. We say that it's unambiguously right, but it needs to be unambiguously wrong for the city to get over the deference that the FCC has accorded under ordinary administrative law principles. And again, because they're an agency speaking within its realm of expertise, Your Honor, and because it's a well-reasoned decision. I don't want to just repeat everything that the FCC said in the Broadnet 2 decision, but for example, as the district court noted, Congress considered a governmental exemption and decided not to adopt it. And moving on to the the issue that the district court actually did decide the case on, which is, so virtual town halls are not in and of themselves a pandemic mitigation measure, which was effectively the district court's ruling here. To fall into the emergency purposes exception, the call must address an imminent time sensitive, and those two terms were used throughout the two FCC orders giving flesh to what the emergency purposes exception means. Counselor, could I just ask you a couple of questions to clarify the scope of your claim? In the reply brief, for example, you say that the emergency purposes exception does not cover all of the city's robocalls promoting virtual town halls. That implies that it does cover some of them. So which ones does it cover and which ones does it not cover? Your Honor, I think that the language used, so we obviously contend that the content of the calls will be controlling. I don't know that we have, certainly not from discovery, have even the content of the calls. We certainly don't have the full content or not the focus of the inquiry. Well, let's talk about the calls that your client received. Are all of those, are you contending that the emergency purposes exception don't apply to any of those? I believe that the calls that we're, I mean obviously the calls that we're launching claims on the basis of we're saying are violations of the of the TCPA. All right, all right. I just, that sentence I thought was kind of, seemed like like you were saying that that some of the calls were okay and and some of the calls were not under the TCPA. No, and I apologize for the lack there. I will say that the city has stronger arguments on some because some of them do mention that the pandemic. All right, so a related question, do you contend that the call satisfied the TCPA as to some COVID complications and not to others? I would say that some might have consented to, some might have asked. I'm not talking about consented, I'm just saying are there some individuals given their circumstances where the calls satisfied the TCPA? In the respect that your honor is asking about, which is I understand to be risk susceptibility to severe consequences from contracting COVID-19, I don't think that a virtual town hall mitigates that risk as to anyone. So, so I don't think that we would agree in that context. Again, I think consent probably is an issue that needs to be explored on a an individualized basis, but I don't know that I would agree about individualized susceptibility to severe consequences, you know, things like advanced age or lung conditions, etc. You also say in your briefing that virtual town halls did not replace in-person town halls. That's correct, your honor. Did Mr. Silver allege that in the complaint? Because I was looking for it, I'm not sure I saw it in there. I can't, I can't say for certain whether we specifically said these are the first time the city did town halls. We certainly didn't say that the opposite, but I can't tell the court that right now. What I will say is that it is in fact true that the city introduced, and the city has conceded in its briefing, that the town halls were a new thing, that as they were introduced, they were introduced for the first time virtually. They were not switched from in-person to virtual, which seems to have been a linchpin of the district court's rationale here. And the district courts, I mean, the reasoning itself, again, I think has to, has to be bootstrapping in the content of the virtual town halls. I think most, obviously, everyone would agree if the city were making calls about, to promote a virtual social gathering, mass social gathering, virtual video game competition, that that would clearly not be an emergency purpose under the TCPA. I think that the virtue of the district court relying on the virtuality aspect, specifically of the promoted event, was that that is a better 12v6 case, whereas it seems more obvious that getting into the content of the town halls themselves would not be something that would be appropriate to do on a 12v6 basis. We've, the court has only seen evidence about, I believe, one, really, of the town halls that were done, which I presume is one that was probably more legitimately COVID-focused than the others. I'm just, I guess I'm not understanding this argument about the content of the town halls. If the town hall was a meeting to talk about COVID, that's one thing. If it was a town hall to talk about something else that maybe is still really important, but it would be a risk for people to be there in person because of COVID, what difference does it make what the subject matter of the town hall is? It's really a question of keeping people away to keep them safe, and then still be able to provide the information they may need about COVID or something else. I would agree to a point, except again, as your Honor had already inquired about, the event itself was new for COVID. It then became self-justifying under COVID. We don't contend that the content is what's controlling here. It probably is true that if you had a town hall anywhere about any set of topics, COVID was going to come up during this time frame because it was such a dominant issue. Let's say it doesn't come up. Let's say there's some other topic about keeping the streets safe or some other health prevention topic. It isn't about COVID, but COVID is still there, and that is the reason they're having the virtual town halls, and they're saying, look, you can still get valuable information from the city, but we also want to protect you from COVID, so we're inviting you to participate virtually. I guess my question really goes to, does the content of the town hall drive this issue, or is it something else? The content of the town hall does not. Now, obviously, what they'll say in the call will be tailored typically to the content of the town hall. What we'd say is that an interpretation like the one that your Honor is alluding to would effectively open up the emergency purposes exception to everything that the city might want to promote during the pandemic. Why? Why? If the content of the town hall doesn't matter, I don't understand that argument. Well, it doesn't matter in the sense that if the call doesn't refer to COVID, if the call itself, the content of the call itself doesn't have any meaning, that's the focus of the analysis. Well, not the content of the call. We can talk about that, but I'm just asking about the content of the meeting. So again, our contention is that the call is the focus of the inquiry. Obviously, if the call lies and says, we're having a town hall about COVID, and then you look at the town hall, and that clearly was untrue, that might be relevant, but we contend that it doesn't go the other way. I think I understand your point. And the only other thing before my time expires to mention is that, of course, the district court's ruling has no force at all for those calls that occurred, and we established they did occur. We believe we plausibly pled them. We pled a pattern of practice. We used words like at a minimum, at least this number of calls, to those calls that occurred after the mass gathering ban was lifted. Thank you, Your Honors. Your Honors, may it please the Court. I'm Sarian Mullins, here today, representing the City of Albuquerque. I think I will begin with where the last comments ended, if the Court is okay proceeding in that fashion. Could you speak up, please? I'm sorry, Judge Kelly. Let me begin with where the argument just ended is what I'd like to do. And that was a discussion of the town hall meetings, and Your Honor, correctly observes, we believe that the content of the meetings themselves is immaterial. What matters is the phone calls, and the phone calls announced the meetings to be a virtually held event. In the midst of a declared public health emergency, calls coming from the government official, in this case, the mayor, that were solely informational, and had no commercial or advertising element, but were solely to disseminate information to the public, and were announcing a socially distanced means of doing so, that was enough. In the beginning of the outbreak, in March of 2020, Counsel, can I just interrupt for one second? Yes, sir. The clock isn't counting down, but are you? Okay, we'll figure it out. I'm sorry, I didn't notice. Go ahead. I didn't notice. At the beginning of the outbreak of COVID in March of 2020, the public health emergencies were declared, and on its own motion, the FCC entered a declaratory ruling. And it did so because there was a concern that the Telephone Consumer Protection Act, the TCPA, not be used to interfere with government communications that were intended to help keep the public safe during this novel and unprecedented time that was an emergency. There's three points that we can draw from that ruling that are most salient here. The first is that COVID unquestionably constituted an imminent health risk. There's no question that was decided. And so the idea of whether there's an imminent health risk or whether there's a public emergency, that's not at hand in this case. Those were declared, and nobody's disputing that. The second lesson we can draw from that sua sponte declaratory ruling is that effective government communications were required to help slow the spread of the disease. That is, and the FCC came forward and said, it's a critical component of the nation's effort to address and contain this emergency, that they be allowed, government officials be allowed to communicate. And the third lesson to be drawn is that if government officials are making calls that are informing about COVID or mitigation measures to help protect us from COVID, they are lawfully made phone calls. So the FCC offered that guidance, and it also offered a test, which you've seen in the papers and the briefs. If the calls come from a health provider or a government official, if the calls are informational, and if the calls are necessitated and related to the pandemic, then they qualify under the emergency purpose exception. Can I just ask you, we're on a 12B6 motion to dismiss. Why, and referring to the content of the calls, why didn't the lack of reference to the pandemic in the phone calls, or at least a number of the phone calls, allow reasonable inference that they were not related to an immediate health or safety risk? Yes, first, in response, Your Honor, the calls might not have mentioned COVID by name, but they did expressly mention a mitigation measure, which is the other part of allowing them to be lawfully made under that FCC ruling. All of the calls, the ones that did mention COVID, the ones that didn't mention COVID, everything in the complaint and everything alleged expressly mentioned the virtual town hall meetings, which were a mitigation measure. When the timing of those calls is made in the midst of the pandemic, it's the first thing on our minds in 2020. You know, it's every newspaper article. It's every conversation. It's our lives, our schools, our work. The mayor is calling in the midst of that timing and inviting the public to a virtual town hall meeting that hasn't been held before. And let me just hit on that point, because we discussed a moment ago, we heard Mr. Harrison discuss that these virtual town hall meetings didn't replace other town hall meetings. Like our kids started suddenly going to school remotely. It wasn't that situation. It was brand new. I think that actually shows that they were necessitated by the pandemic. Let me just ask, because we're limited to the four corners of the complaint. Is that in the complaint that these calls, that this was new? Well, it certainly is more fleshed out in his briefing. But yes, in the complaint, the allegation is that the first town hall occurred in March of 2020. So I think that's a paragraph 30. I apologize if my memory's off on that. I think it's there. So from the four corners of the complaint, these virtual town hall meetings were precipitated by the outbreak and occurred firstly in March of 2020. Well, coming back to the four corners of the complaint that you were talking earlier about how the reference to the virtual town halls, everybody knows that it has to do with the pandemic. But again, we're just dealing with the complaint. The complaint says, wait a minute, these calls didn't refer to the pandemic. Why should a court be able to read that into the calls if it's not in the complaint? Well, for two reasons. The first, again, is that even if the calls didn't mention COVID, they mentioned a mitigation measure. And so that's right within the phone calls. And secondly, the only way to read the complaint as unrelated to COVID is to make a very unreasonable inference. A call coming from the mayor in March of 2020 announcing a virtual town hall meeting, the plausible inference is it related to COVID, the virtual town hall meeting being a mitigation measure instituted in response to COVID. And to invite the opposite conclusion, which is that a call from the mayor in the midst of a pandemic asking your virtual attendance at a public meeting was unrelated to COVID is implausible. And we are being judged by a plausibility standard, not possibility and not a speculative. But what is a reasonable inference based on the court's exercise of common sense and judicial experience? Did the district court find the need to take judicial notice of the pandemic? The district court, Your Honor, took judicial notice of one fact, which was that the pandemic was in existence throughout the material period of the complaint. Yes. So I think when the timing of the complaint is, I mean, the timing of the calls alleged in this case is material and their subject matter is material. And the subject matter, as alleged in the four corners of the complaint, announced a mitigation measure. And for those reasons, the complaint within its four corners is not sufficient to state a plausible claim for relief. I'm sorry, Your Honor, I'm going to flip forward to another call. I'm sorry, another question the court had about if the calls were well received by some of the community, but not other of the community. Is there a decision to be made about almost a relevancy question, Your Honor, which was addressed in the briefing and touched on this morning? And I would say that if the calls are made to the potentially affected community, then the nexus is appropriately there. And as alleged in this case, they were made to the area code of the community. The mayor is officiating over and asking to attend public meetings concerning. Counsel. Counsel. Yes. Does the. Nobody knows where to look. Sorry. Does the city concede that they are covered by this act? No. The city does not concede that, Judge Kelly. And if this is a good time, I will turn to that that argument. The district court correctly dismissed the complaint because the emergency purpose exception applies to the cause in this case. But there is an independent reason to dismiss the case. And it would be appropriate to affirm on that basis as well, which is that the statute applies to persons. And it is our position and the city has argued that a person does not include governments. Local governments here are in particular question. The language of the act itself. Isn't isn't a corporation a person? Yes, Your Honor. It is. Isn't Albuquerque a municipal corporation? Correct, Your Honor. The Federal Communications Act, which the TCPA amended in 1991, does include a definition of person. And the definition extends to partnerships, corporations, associations, other business entities. It also. Section 153 said it includes any corporation. Correct, Your Honor. It does. And there's one case that's considered this very question. It is the Clark versus Buffalo School District. And in that case, I believe from the Western District of New York, the court looked at that question and said, when we examine the additional examples of who is a person under the Communications Act. The entities listed are all nongovernmental entities. And so we're going to group those words under the statutory construction device. NOSOTERA Associates, those words are going to be given their common meaning. How about the plain meaning rule? Well, under the plain meaning rule of person, Your Honor. The plain meaning rule of any corporation. And we would disagree that the plain meaning of person extends to governmental entities. I understand that. But the statute says person includes corporation, includes any corporation. And Albuquerque is a municipal corporation. Is it? I don't know. I assume it is. Your Honor, yes, you are correct. It is. But our ordinary understanding, as well as the cases that we've referenced in our briefs that have looked at that precise question, have found the ordinary meaning of corporation is not understood by everyday people to include municipalities or governments. Well, that may be. But that word any, that's a pretty powerful word, isn't it? I think any when it's used in a group of nongovernmental entities. So it's going to cover any manner of private or nongovernmental entity. I would submit they're all swept into the statute. But governments are unique. And municipal governments or corporations are very unique from the list of other private business entities included in that definition. They're not unique in the sense that they can make robocalls just as much as others can. They can do business. And they have similarities, but they have very distinct differences. And, again, in the common understanding and in the case law that we've cited in our briefs, the understanding of corporations has not extended to governmental or municipal corporations. I understand that. So I do think, though, that the really important point on this question Judge Kelly raises about personhood is the statutory text. I do think that you start with the text and Congress said person. And Congress knows how to include governments and municipalities when it chooses to do so. And there's a number of acts that the court can look at where municipalities have been affirmatively and expressly included. And the submittee submits that when they're not included, when there's a conspicuous absence in that statute, that the presumption should not be to include governments. Was it the mayor who was on the phone? Yes, it was. Why isn't the mayor a person? The mayor might be a person, Your Honor. I think a mayor probably is a person. But in the context of this lawsuit where they've sued the city. I understand. We're here arguing that the city is not a person. I do want to point out for the court, though, something on this before I leave and I'm close to my time. In preparing for today's argument, I did notice that a regulation promulgated under the TCPA says that something slightly different than the language of the statute, which just says no person. The regulation says no person or entity. And, Your Honor, I'm out of time. May I finish this one point to the court? Sure. Do you want to give us the site? Yes, it is 47 CFR 64.1200, subparagraph A1. And, Your Honor, I am bringing this to the court's attention. It wasn't raised by the appellant. And the FCC didn't even rely on its own regulation in deciding in its interpretive decision that local governments are persons. And I would submit... Counsel, if it hasn't been raised, but you think it would be helpful to the court, maybe a 28J letter would be the most effective. Counsel, you can respond to that, of course. Yes. Why don't we do that? That is fair, Your Honor. And so, without any time left, I would just respectfully request that the court affirm the district court and dismiss plaintiff's case. Did Mr. Harrison have rebuttal time? I think she went over about a minute. If you'd like one minute, you can have it. Certainly. Your Honors, the long and short of it is that the virtual town halls did nothing to mitigate COVID beyond limiting their own deleterious impact in terms of the fact that they would constitute a risk were they held in person. This is a case where we do need to have discovery. It's inappropriate on 12B6. For example, we were able to allege these numbers were harvested from 311, that the city bypassed certain other available processes, like its ability to send a text message or call out to all cell phones physically located within the city. And then, for example, we couldn't allege it, but we know from public records requests that voter rolls were used, in part in the compilation of the list of numbers to be called, thus getting to, I guess, if the court hasn't gotten a sense of it, what we think might have been the actual purpose of these calls, which is effectively a pre-election political rallying purpose. Thank you, Your Honors. Thank you, counsel. Thank you to both counsel this morning. We appreciated these arguments. The case will be submitted. Counsel are excused.